IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| MINDY C.,[1] § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 1:20-CV-00222-H-BU |
| § | |
| KILOLO KIJAKAZI,[2] § | |
| Acting Commissioner of Social Security § | |
| § | |
| Defendant § | |
| § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Mindy C. seeks judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") according to 42 U.S.C. § 405(g). Dkt. No. 1. Under Special Order No. 3-251 of this Court, this case was automatically referred for a determination of non-dispositive matters and for findings, conclusions, and recommendation on dispositive matters. The parties have not consented to proceed before a magistrate judge.

For the reasons explained below, the undersigned recommends that the Court affirm the Commissioner's decision.

---

[1] Due to concerns regarding the privacy of sensitive personal information available to the public through opinions in Social Security cases, Plaintiff is identified only by first name and last initial.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Under Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

I. BACKGROUND

Plaintiff alleges that her disability began May 28, 2018. *See* Administrative Record, Dkt. No. 15-1 ("Tr.") at 170. Plaintiff applied for disability on October 25, 2018, for supplemental security income and for disability insurance under Medicare *Id*. Her application was initially denied on January 18, 2019, and again upon reconsideration on March 25, 2019. Tr. at 98, 97. Plaintiff challenged the denial and requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at 112. That hearing was held via video conference on January 29, 2020, in Abilene, Texas, with the ALJ sitting remotely in Fort Worth, Texas. Tr. 33-67.

At the time of the hearing, Plaintiff was 45 years old. Tr. 36. She had completed two years of college. Tr. 214. She had past work experience as a family service worker, a receptionist, a teacher's aide, and an assistant director at a daycare. Tr. at 233.

The ALJ found that Plaintiff was not disabled and was not entitled to disability benefits. *See* Tr. 12-29 ("ALJ Decision"). At step one of the analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 13, 2018, the alleged disability onset date.[3] Tr. 17. At step two, the ALJ found that Plaintiff had several severe impairments including degenerative disc disease of the cervical spine, diabetes mellitus with diabetic retinopathy and a history of vitreous hemorrhage and macular edema in the left eye, hypertension, migraine headaches, depression, and anxiety. Tr. at 18. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that

---

[3] As discussed further below, the Commissioner employs a five-step analysis in determining whether claimants are disabled under the Social Security Act. Also, the dates given in the ALJ's opinion do not match those in the Administrative Record. This Court includes the dates filed above and the dates given by the ALJ here.

met the severity required in the Social Security regulations. Tr. 18-20. The ALJ also determined the Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> The individual can lift no more than 10 pounds frequently and 20 pounds occasionally. The individual can stand or walk for 6 hours in an 8-hour workday, and can sit up to 6 hours in an 8-hour workday. She needs to alternate sitting and standing every hour for a few minutes. The individual can occasionally stoop, kneel, crouch, crawl, and balance. She can occasionally climb ramps and stairs. The individual can never climb ladders, ropes, and scaffolds. She is limited to detailed but not complex job tasks. She can have only occasional public contact. She has near acuity based on best corrected vision of the right eye.

Tr. 20.

The ALJ based his opinions on the Plaintiff's testimony, Plaintiff's medical history, and the ALJ's review of additional evidence. Tr. 20-22. At step four, the ALJ found that Plaintiff could not return to her past relevant work. Tr. 23. The ALJ then considered Plaintiff's age, education, her RFC, and the testimony of a vocational expert ("VE") to determine that there were jobs in the national economy that exist in significant numbers that Plaintiff can perform. Tr. 24-24. Accordingly, the ALJ determined that Plaintiff had not be under disability as defined by the Social Security Act, for the period in question. Tr. 25.

Plaintiff appealed the ALJ's decision to the Appeals Council, the Council affirmed, and Plaintiff timely filed this action in federal district court.

## II. LEGAL STANDARDS

Judicial review of the Commissioner's decision to deny benefits is limited to determining whether that decision is supported by substantial evidence and whether the

proper legal standards were applied to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *see also Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Substantial evidence means more than a scintilla, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). While a reviewing court must scrutinize the administrative record to ascertain whether substantial evidence supports the Commissioner's findings, it may not reweigh the evidence, try issues de novo, or substitute its own judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (citing 42 U.S. § 405(g)). A reviewing court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To be entitled to Social Security benefits, a claimant must show that he is disabled within the meaning of the Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

In evaluating a disability claim, the Commissioner has promulgated a five-step sequential process to determine whether: (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the Social Security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity. *See* 20 C.F.R. § 404.1520; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. Once the claimant satisfies his or her initial burden, the burden shifts to the Commissioner at step five to show that there is other gainful employment in the national economy that claimant can perform. *Greenspan*, 38 F.3d at 236. If the Commissioner shows that other jobs are available to the claimant, the burden of proof shifts back to the claimant to rebut such a finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557 (citing *Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam)); *see also Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id*. However, the Court does not hold the ALJ to procedural perfection. *See Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) Instead, a court will only reverse the

ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record and only if that failure prejudiced Plaintiff. *Id*. That is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728–29 (5th Cir. 1996).

### III.  ANALYSIS

Plaintiff challenges the ALJ's decision on three grounds: (1) the failure of the ALJ to account in the RFC for all of Collett's accepted functional limitations; (2) the failure of the ALJ to account in the RFC for any visual limitations despite finding Collett had severe visual limitations; and (3) the ALJ's failure to identify in his decision any medical opinion that was the basis for the RFC finding. Dkt. No. 25 at 6. The undersigned takes each in turn.

A. <u>The ALJ's RFC determination as it relates to Plaintiff's accepted functional mental limitations is supported by substantial evidence</u>.

Plaintiff argues that the ALJ "failed to account for all of [Plaintiff's] accepted functional limitations in the RFC finding." Dkt. No. 25 at 14. Specifically, Plaintiff argues that while "the ALJ found that [Plaintiff] had moderate limitation in concentration, persistence, or pace . . . the ALJ did not include in his RFC finding any limitations in [Plaintiff's] ability to complete tasks, handle stress, or maintain attention for less than extended periods." *Id*. at 14-15. Rather, Plaintiff asserts, "the only limitations in mental functioning accounted for in the ALJ's RFC finding were a limitation to 'detailed but not

6

complex tasks,' and 'only occasional public contact.'" *Id*. at 15. And for this reason, "[t]he ALJ's RFC finding, and therefore his hypothetical questions to the VE, are deficient. . . ." *Id*.

The Commissioner responds that "substantial evidence supports the ALJ's mental RFC finding that Plaintiff could perform detailed but not complex tasks and have only occasional public contact." Dkt. No. 26 at 4. The Commissioner argues that while the ALJ found that Plaintiff had moderate difficulties regarding concentration, persistence, or pace, "[t]he ALJ reasonably accounted for any moderate limitations . . . by limiting Plaintiff to performing detailed but not complex job tasks." *Id*. The Commissioner argues Plaintiff is conflating the "paragraph B" findings with the RFC findings and that there is no requirement that an ALJ incorporate "paragraph B" findings verbatim in either the hypothetical questions or the RFC. Id. at 5-6.

In reply, Plaintiff acknowledges that the ALJ is not "required to incorporate moderate concentration, persistence, or pace word-for-word in the RFC finding." Dkt. No. 27 at 3. But Plaintiff argues that the ALJ is required to account for the functional limitations underlying those "paragraph B" findings, here including Plaintiff's "limitations in handling stress, completing tasks, and concentrating for more than 30 minutes at a time." *Id*. at 4.

An individual's RFC is the most an individual can do despite his limitations or restrictions. *See* 20 C.F.R. § 404.1545(a)(1). An RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1, 3–5 (S.S.A. July 2, 1996). "A 'regular and continuing basis' means 8 hours a day, for

7

5 days a week, or an equivalent work schedule." *Id*. at *1. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." *Id*.

"It is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016) (per curiam) (quoting *Taylor v. Astrue,* 706 F.3d 600, 603 (5th Cir. 2012)). The ALJ's RFC assessment is to be based upon "*all* of the relevant evidence in the case record," including, but not limited to, "medical history, medical signs, and laboratory findings; the effects of treatment; and reports of daily activities, lay evidence, recorded observations, and work evaluations." *Eastham v. Comm'r of Soc. Sec. Admin.*, No. 3:10-CV-2001-L, 2012 WL 691893, at *6 (N.D. Tex. Feb. 17, 2012) (emphasis in original) (citing SSR 96-8p).

The ALJ is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam). But the ALJ is not required to expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-CV-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422–23 (5th Cir. 2008) (per curiam)). Nor is an ALJ required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The ALJ may find that a claimant has no limitation or restriction as to a functional capacity when there is no allegation of a physical or mental limitation or restriction regarding that capacity and no information in

the record indicates that such a limitation or restriction exists. *See* SSR 96-8p, 1996 WL 374184, at *1.

Severe mental impairments are evaluated using the psychiatric review technique ("PRT") as outlined in 20 C.F.R. §§ 404.1520a and 416.920a. The PRT is a tool to evaluate mental limitations, but does not require those limitations to be included in the RFC. 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Under paragraph B of both sections, the ALJ evaluates the symptoms, signs, and laboratory findings to determine if there is a medically determinable mental impairment and then the ALJ rates the degree of functional limitations of those impairments. 20 C.F.R. §§ 404.1520a(b), 416.920a(b). The ALJ uses the "paragraph B" criteria to rate the severity of a claimant's mental limitations in the following functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3); *see id.* Part 404, Subpart P, Appendix 1. Additionally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. §§ 404.1545(d), 415.925.

The ALJ assesses the claimant on each of the paragraph B criterion using a five-point scale including none, mild, moderate, marked, and extreme with extreme meaning the claimant is incapable of conducting any gainful activity. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Generally, a rating of "none" or "mild" means the impairment or impairments is not severe and will not indicate "more than a minimal limitation [in a claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). The ALJ must document the use of the PRT and include specific findings

in each area. 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). However, the PRT is not an RFC assessment but a tool to rate the severity of mental impairments. SSR 96-8p, 1996 WL 374184, *4. The ALJ will then assess all the relevant evidence in the case record and "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, at *5.

Here, prior to determining Plaintiff's RFC, the ALJ concluded at step two that Plaintiff, in addition to her physical impairments, suffered from the severe mental impairments of depression and anxiety. Tr. 18. Before proceeding to the RFC analysis, the ALJ analyzed Plaintiff's mental functional limitations using the "paragraph B" criteria. *Id*. The ALJ found Plaintiff to have a mild limitation in understanding, remembering, or applying information. Tr. 19. The ALJ found Plaintiff had a moderate limitation in interacting with others. *Id*. With respect to concentrating, persisting, or maintaining pace, the ALJ concluded Plaintiff had a moderate limitation. *Id*. And with respect to adapting or managing oneself, the ALJ found Plaintiff had a mild limitation. *Id*. The ALJ further noted that

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

Tr. 20.

Later, in addition to the physical restrictions in the RFC, the ALJ concluded that Plaintiff "is limited to detailed but not complex job tasks" and "[s]he can have only occasional public contact." *Id*. In support of this assessment, the ALJ noted that in addition to her physical impairments, Plaintiff testified at the hearing that she:

> also suffered from anxiety and depression. She did not handle stress well, which affected her ability to control her blood pressure and blood sugar. She has been on medication for depression and anxiety for about a year. She recently started mental health treatment. She did not like being around people.

Tr. 21.

The ALJ also noted that that the medical evidence of record reflected a mental status examination on March 25, 2019, that Plaintiff's "insight was good and . . . claimant exhibited normal mood and affect." Tr. 22. He also noted Plaintiff reported she was living independently and was able to take care of her activities of daily living. Tr. 22.

Courts within this district have found no legal error where an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe. *See*, *e.g.*, *Gonzales*, 2016 WL 107843, at *6, *8 (holding that "the ALJ adequately discussed and considered the limiting effects of [Plaintiff's] mental impairments in formulating his RFC" when the ALJ's RFC analysis considered relevant mental health records, reports, and plaintiff's testimony regarding his mental impairments).

As noted above, the ALJ recognized that Plaintiff suffered from the severe mental impairment of depression and anxiety. The ALJ appears to have considered the medical

11

evidence and Plaintiff's testimony relevant to the limiting effects of her mental impairments in arriving at the RFC. And the ALJ accounted for Plaintiff's mental limitations with the restriction that Plaintiff "is limited to detailed but not complex job tasks" and "[s]he can have only occasional public contact." Tr. 20.

For these reasons, the undersigned finds that the ALJ's RFC determination as it relates to Plaintiff's accepted functional mental limitations is supported by substantial evidence and does not constitute legal error. *See Danny R. C. v. Berryhill*, No. 3:17-CV-1682, 2018 WL 4409795, at *15–16 (N.D. Tex. Sep. 17, 2018) (finding no legal error where the ALJ declined to include mental limitations in plaintiff's RFC because the ALJ's "decision reflect[ed] that he considered Plaintiff's mental functioning when performing his RFC analysis.").

B. <u>The ALJ's RFC determination as it relates to Plaintiff's visual impairments is supported by substantial evidence.</u>

Next, Plaintiff argues the ALJ failed to account for her visual limitations in her RFC despite finding that Plaintiff had severe visual limitations. Dkt. No. 25 at 18. Plaintiff claims because the ALJ found she had severe impairments of "diabetic retinopathy and a history of vitreous hemorrhage and macular edema in her left eye," the RFC should have reflected these impairments. *Id.* Plaintiff claims "the ALJ included no limitation associated with [Plaintiff's] vision in his RFC finding." *Id*. Rather, Plaintiff argues, "the ALJ simply found that [Plaintiff] 'has near acuity based on best corrected vision of the right eye' . . . which equates to no limitation in performing basic work activities." *Id*. at 19.

Moreover, Plaintiff argues, "[t]he ALJ did not specify how much 'near acuity'

[Plaintiff] has, or if she has any limitations in near acuity." *Id*. at 20. Plaintiff argues that "the evidence of record . . . shows that after cataract surgery [Plaintiff] continued to have impaired vision with no improvement in her visual acuity" and that "[s]uch evidence clearly demonstrates that [Plaintiff] experienced impairment in her ability to perform basic visual work-related activities" even though these limitations were not accounted for in the RFC. *Id*. at 22. Plaintiff argues that this "inconsistency between the ALJ's finding of severity at step two regarding [Plaintiff's] visual impairments, and his failure to include any limitations regarding those impairments in the RFC finding" mandates a remand. *Id*. at 23.

The Commissioner responds that the ALJ properly considered Plaintiff's severe visual impairments throughout the RFC "and reasonably concluded that she had near acuity based on best corrected vision of the right eye." Dkt. No. 26 at 6. The Commissioner cites the record evidence in support of the argument that Plaintiff's "vision had improved and she was doing well," (*Id*.) that the "diabetic retinopathy in her right eye was stable and for her left eye, her doctor discussed the importance of strict blood sugar and blood pressure control," (*Id*. at 6-7) that "Plaintiff's left eye vitreous hemorrhage was resolved and stable in September 2019," (*Id*.at 7) that "[i]n July 2018, she had 20/25 best corrected vision in the right eye and 20/60 in the left eye," (*Id*.) that in October 2019, "Plaintiff's visual acuity was measured at 20/50 in the right eye and counting fingers in the left eye," (*Id*.) that "Plaintiff testified in January 2020 that her 'good' eye got blurry only once or twice or [sic] week depending on her diabetes and high blood pressure," (*Id*.) and that "Plaintiff said her blood pressure got high only about once a week," (*Id*.).

13

The Commissioner argues that "the ALJ reasonably found that those conditions were somewhat controlled with medication" and that conditions controlled or controllable by treatment are not disabling. *Id*. But regardless, the Commissioner argues, "the VE testified that Plaintiff could perform housekeeper and photocopy machine operator jobs even if she was unable to perform work tasks requiring near acuity." *Id*. Finally, the Commissioner argues that every impairment found by an ALJ to be severe is not required to have a corresponding limitation in the RFC because the determination of severe impairment at step two is different than the RFC determination. *Id*. at 7-8.

Plaintiff's argument that, because the ALJ found she had severe impairments at step two, he was also required to reflect those impairments in the RFC, conflates the two determinations, which are distinct inquiries. *See Gutierrez v. Barnhart,* No. 04–11025, 2005 WL 1994289, at *9 (5th Cir. 2005) ("A claimant is not entitled to social security disability benefits merely upon a showing that she has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits."); *Boyd v. Apfel,* 239 F.3d 698, 706 (5th Cir.2001) ("The ALJ's finding that [the claimant] had a 'combination of impairments that is severe' did not foreclose a finding that [the claimant] had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding."). In other words, the ALJ determines the RFC not based on the existence of a severe impairment, but rather based on whether that severe impairment limits the claimant's ability to work. *Webb v. Astrue*, No. 04:08-CV-747-Y, 2010 WL 1644898, *9 (N.D. Tex- Mar. 2, 2010) (holding that a severe impairment

and finding the claimant still capable of work is not necessarily an inconsistent determination.).

Here, the ALJ considered the long history of Plaintiff's visual issues by thoroughly examining the medical records and noting that her final visual assessment measured 20/50 in her right eye and counting fingers in her left eye with a vitreous hemorrhage. Tr. 21. The ALJ also found that Plaintiff's visual issues were typically improved when she adheres to the treatment and medication to control her blood sugar and blood pressure levels. Tr. 22. Plaintiff testified her right eye was blurry once or twice a week and that it fluctuates depending on her blood sugar. Tr. 38. Plaintiff's representative at her hearing also testified that her vision fluctuates depending on her diabetes and high blood pressure. Tr. 35-36.

Further, Plaintiff has failed to show what error the ALJ made and how she was harmed by it. Plaintiff's representative asked the VE about jobs requiring occasional near acuity and still found jobs available in the national economy. Tr. 64. While the ALJ found Plaintiff to have a severe impairment, the substantial evidence of record supports the ALJ's RFC as it relates to her visual impairments. .

C. <u>The ALJ's RFC is supported by substantial evidence of record notwithstanding that the ALJ did not identify in his decision any medical opinion that was the basis for the RFC finding</u>.

Finally, Plaintiff argues that the ALJ failed to identify any medical opinion to establish the effect of Plaintiff's medical conditions on her ability to work, and this failure deprives the RFC of substantial evidence. Dkt. No. 25 at 23. Specifically, Plaintiff argues that the ALJ found that she suffers from a variety of severe impairments that "have more

15

than a minimal effect on [Plaintiff's] ability to perform basic work activities," but then "rejected the only medical opinion evidence of record assessing [her] functional limitations, those of the State agency medical consultants["SAMC"]." *Id*.

Plaintiff notes that the ALJ was not persuaded by the SAMC opinions because additional evidence, including Plaintiff's appearance and testimony at the hearing, supported a more restrictive RFC than would have been supported by the SAMC opinions. *Id*. But in rejecting the SAMC opinions, the ALJ failed to identify any other medical assessment he relied on in arriving at the RFC. *Id*. Rather, Plaintiff argues, the ALJ simply based the RFC on his "lay interpretation of the objective medical data to determine the effects of [Plaintiff's] severe impairments on her ability to work." *Id*. at 26. In other words, Plaintiff argues that the ALJ committed an error under *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Dkt. No. 25 at 23-24.

The Commissioner responds by arguing the ALJ considered "all the relevant evidence, including all medical evidence of record," and is not required to mirror a medical opinion in the RFC. Dkt. No. 26 at 9. Instead, "the ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole," and that task "is not the responsibility of any physician, and such an assessment is not a medical opinion." *Id*. Nor is the ALJ required to accept the medical evidence "in toto." *Id*.

As for the SAMC opinions, the Commissioner argues that "the ALJ was not persuaded because he felt the subsequent medical evidence and Plaintiff's hearing testimony indicated a need for greater limitations" than suggested by the SAMCs. *Id*. at 9-10. Specifically, "the ALJ added visual, postural, and mental limitations that were missing

from the prior administrative medical findings, two of which found Plaintiff had no limitations whatsoever." *Id*. at 10. Finally, the Commissioner urges that "an ALJ is free to incorporate only those limitations that he finds 'consistent with the weight of the evidence as a whole,'" and it is proper for him to interpret the medical evidence to determine a claimant's capacity for work. *Id*.

Plaintiff responds by arguing that "while it is the responsibility of the ALJ to determine a claimant's RFC, . . . where the record does not clearly establish the effect of a claimant's condition(s) had on his ability to work, the ALJ's RFC finding is not supported by substantial evidence." Dkt. No. 27 at 2. Plaintiff faults the Commissioner for failing "to point to any evidence of record identified by the ALJ identified that clearly establishes the functional effect of [Plaintiff's] medically determinable impairments on her ability to work." *Id*.

An ALJ needs to understand both the conditions a claimant suffers from and how those conditions limit the claimant's ability to work. *See Ripley*, 67 F.3d at 557-58. In *Ripley*, the court found that the ALJ had four years of records supporting that Ripley had a back problem, but the ALJ did not have evidence on how the back problem effected Ripley's ability to work. *Id*. at 557.

There is often a medical source statement in the record describing the work that the claimant is still capable of performing and, if not, the ALJ should typically request one. *Id.* at 557. This is consistent with the ALJ's duty to "develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Id*.

However, the absence of a medical source statement does not necessarily make the record incomplete. *Id.* In such circumstances, the reviewing court's focus remains on whether the existing record contains the substantial evidence necessary to support the ALJ's decision. *Id*. This does not mean that an ALJ may rely on his own medical opinion in arriving at the types of work a claimant is still capable of performing. *See Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009) (holding that "the ALJ impermissibly relied on his own medical opinions as to the limitations presented by 'mild to moderate stenosis' and 'posterior spurring' to develop his factual finding). But the ALJ may rely on the claimant's testimony to determine how an impairment affects his ability to work. *Gutierrez*, 2005 WL 1994289, *7 (finding no error even in absence of medical source statement where ALJ based RFC on "several available pieces of evidence in the record, including [claimant's] own testimony that she was able to perform certain tasks despite claimed" impairment.). And the ALJ can support an RFC determination based on his consideration of inconsistencies in a claimant's medical records and/or her testimony. *Id*.

But with or without a medical source statement, an ALJ's failure to specifically discuss all evidence that supports his decision does not by itself deprive the RFC of substantial evidence because an ALJ is not required to "follow formalistic rules in his articulation" of the evidence supporting his decision, and his failure to do so "compromises no aspect of fairness or accuracy that this process is designed to ensure." *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

Here, the ALJ found that Plaintiff had a severe visual impairment, but also found that her symptoms were not as severe as she described. Tr. 22. The ALJ also determined

those symptoms would not impact Plaintiff's ability to work more than minimally. *Id*. The ALJ arrived at the RFC after considering and explaining his rational regarding each portion of evidence: the hearing testimony, the medical evidence, the lay persons testimony, and the state disability determinations. Tr. 20-23. The ALJ explained the hearing testimony was not persuasive because of the contradictions between the plaintiff's testimony and her medical records. Tr. 20-22. For example, Plaintiff testified she was disabled in part because of her vision problems but then also testified she only had blurry vision once or twice a week. Tr. 38.

Additionally, the ALJ found that the Plaintiff's symptoms were somewhat controlled when she adhered to her medication regime and her prescribed treatments. Tr. 22. The ALJ included additional limitations because of the additional records. Tr. 23. The ALJ also heard testimony that Plaintiff reads, drives, and watches movies, all things that require her vision. Tr. 44-52.

Finally, the ALJ noted that Plaintiff's vision had only slightly decreased from her original diagnosis of 20/20 in her right eye and 20/50 in her left eye to 20/30 in her right eye and 20/60 in her left eye. Thus, the ALJ found Plaintiff's testimony regarding the intensity and limiting effects of her visual impairments were inconsistent with the record. Tr. 21-23.

For these reasons, the undersigned FINDS that the ALJ's RFC is supported by substantial evidence of record notwithstanding that the ALJ did not identify in his decision any medical opinion that was the basis for the RFC finding.

## IV. RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the hearing decision be AFFIRMED. Because all parties have not consented to proceed before a United States Magistrate Judge, the undersigned directs the Clerk of Court to REASSIGN this case to United States District Judge Wesley James Hendrix in accordance with normal procedures.

## V. RIGHT TO OBJECT

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific or sufficient. Failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except on grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 16th day of June, 2022.

_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE