UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

MINDY C.,

     Plaintiff,

v.                                                                                          No. 1:20-CV-222-H-BU

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

     Defendant.

**ORDER ACCEPTING THE FINDINGS, CONCLUSIONS, AND
RECOMMENDATION OF THE MAGISTRATE JUDGE**

     United States Magistrate Judge John R. Parker made Findings, Conclusions, and a

Recommendation (FCR) in this case on June 16, 2022.  *See* Dkt. No. 28.  Judge Parker

recommended that the Court affirm the Commissioner of Social Security's decision to deny

the plaintiff's application for disability insurance benefits and supplemental security income.

*Id.* at 1–2.  The plaintiff filed three objections to that recommendation.  Dkt. No. 29 at 1–5.

The Commissioner did not respond.  Having reviewed the objected-to parts of Judge

Parker's work de novo, the Court overrules the plaintiff's objections.  The FCR is adopted in

full, and the ALJ's hearing decision is affirmed.

**1.      Factual and Procedural Background**

     The plaintiff filed an application for supplemental security income and for disability

insurance with the Social Security Administration in October 2018.  Dkt. No. 21-1 at 173.

The Administration denied her claim in January 2019 and again upon reconsideration in

March 2019.  *Id.* at 79–105.  She timely requested a hearing before an Administrative Law

Judge.  *Id.* at 115.   That hearing was held in January 2020.  *Id.* at 34–70 (hearing transcript).

At the hearing, the plaintiff and a vocational expert (VE) testified. *Id.* The ALJ

considered the evidence before him and, in March 2020, the ALJ issued his decision (*id.* at

15–32), concluding that the plaintiff was not disabled and was not entitled to disability

benefits based on the requisite five-step analysis. *Id.* at 28. At step one, the ALJ found that

the plaintiff had not engaged in substantial gainful activity since August 13, 2018, the

alleged disability onset date. *Id.* at 20. At step two, the ALJ found that plaintiff had many

severe impairments including degenerative disc disease of the cervical spine, diabetes

mellitus with diabetic retinopathy and a history of vitreous hemorrhage and macular edema

in the left eye, hypertension, migraine headaches, depression, and anxiety. *Id.* at 21. At

step three, the ALJ found that plaintiff did not have an impairment or combination of

impairments that met or medically equaled the severity of one of the impairments listed in

the applicable regulations. *Id.* at 21. The ALJ also found that the plaintiff had the residual

functional capacity (RFC) to perform the following:

> The individual can lift no more than 10 pounds frequently and 20 pounds
> occasionally. The individual can stand or walk for 6 hours in an 8-hour
> workday, and can sit for up to 6 hours in an 8-hour workday. She needs to
> alternate sitting and standing every hour for a few minutes. The individual can
> occasionally stoop, kneel, crouch, crawl, and balance. She can occasionally
> climb ramps and stairs. The individual can never climb ladders, ropes, and
> scaffolds. She is limited to detailed but not complex job tasks. She can have
> only occasional public contact. She has near acuity based on best corrected
> vision of the right eye.

*Id.* at 23. At step four, the ALJ found that the plaintiff was unable to perform her past

relevant work. *Id.* at 26. Finally, the ALJ determined that jobs existed in the national

economy in significant numbers that the plaintiff could perform. *Id.* at 27–28. Thus,

according to the ALJ's analysis, the plaintiff was not disabled for the period in question. *Id.*

at 28.

After the ALJ issued his decision, the plaintiff requested review from the Social Security Appeals Council, which denied her request in June 2020, *id*. at 4–10. Invoking 42 U.S.C. § 405(g), the plaintiff timely appealed to this Court for review of the Commissioner's decision to deny her application for supplemental security income and disability insurance benefits. Dkt. No. 1. The matter was automatically referred to the Honorable Magistrate Judge John Parker pursuant to Special Order 3. After the Commissioner filed an answer (Dkt. No. 19) and the administrative record was filed (Dkt. No. 21-1), the plaintiff filed her brief requesting that the Commissioner's decision be reversed and remanded. Dkt. No. 25 at 31. The Commissioner responded in defense of the ALJ's decision. Dkt. No. 26. And the plaintiff replied. Dkt. No. 27.

Judge Parker then issued findings, conclusions, and a recommendation that the ALJ's decision be affirmed. Dkt. No. 28. The plaintiff filed timely objections (Dkt. No. 29), to which the Commissioner failed to respond. The FCR is ripe for the Court's review.

## 2. Standard of Review

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1). By contrast, the district judge reviews any unobjected-to proposed findings, conclusions, and recommendations only for plain error. *Portwood v. Schneider & McKinney P.C.*, No. 3:20-CV-03344-X, 2020 WL 7056302, at *1 (N.D. Tex. Dec. 2, 2020) (Starr, J.). The Court need not review an FCR de novo if a party's objections are merely recitations of arguments already made to and rejected by the magistrate judge. *See Nolen-Davidson v. Comm'r, Soc. Sec. Admin.*, No. 4:20-CV-1085-P, 2021 WL 4476763, at *1 (N.D. Tex. Sept. 30, 2021) (Pittman, J.) (explaining that conducting de novo review of previously rejected

arguments undermines the efficiency gains that were the goal of the Federal Magistrate's Act); *see Thomas v. Arn*, 474 U.S. 140, 153 (1985) ("It seems clear that Congress would not have wanted district judges to devote time to reviewing magistrate's reports except to the extent that such review is requested by the parties or otherwise necessitated by Article III of the Constitution.").

Just because the Court's review of the Magistrate Judge's FCR is de novo does not mean its review of the Administrative Law Judge's decision is, too.  Rather, the Court reviews the ALJ's determination for "substantial evidence."  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  Indeed, the Court's "review of Social Security disability cases is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the [ALJ] applied the proper legal standard."  *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citation and internal quotations omitted).  Substantial evidence is "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see Copeland*, 771 F.3d at 923 ("Substantial evidence is more than a mere scintilla and less than a preponderance." (citation and internal quotation marks omitted)).  The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history.  *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995).

When reviewing an eligibility determination, "[a] court will reverse the ALJ's decision as not supported by substantial evidence if the claimant shows that [] the ALJ

– 4 –

failed to fulfill his duty to develop the record adequately." *Jones v. Astrue*, 691 F.3d 730, 733

(5th Cir. 2012) (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). But the Court does

not hold the ALJ to procedural perfection, and the Court will reverse the ALJ's decision for

failure to adequately develop the record only if that failure prejudiced the plaintiff. *See*

*Jones*, 691 F.3d at 733. "To establish prejudice, a claimant must show that he 'could and

would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728

(quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

      In short, a court's review of an ALJ's decision to approve or deny benefits is

deferential. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). The Court "may not reweigh

the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that

of the [ALJ], even if the evidence preponderates against the [ALJ's] decision." *Id.* (quoting

*Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988)). "Conflicts in the evidence are for the

[ALJ] and not the courts to resolve." *Id.* (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th

Cir. 1990)).

**3.     Analysis**

      "In order to qualify for disability insurance benefits or [supplemental security

income], a claimant must suffer from a disability." *Copeland*, 771 F.3d at 923 (citing 42

U.S.C. § 423(d)(1)(A)). The Social Security Act defines "disability" as the "inability to

engage in substantial gainful activity by reason of any medically determinable physical or

mental impairment" that can be expected to result in death or last for a continued period of

12 months. *See* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d

391, 393 (5th Cir. 1985). A disabled worker is entitled to monthly social security benefits if

certain conditions are met. *See* § 423(a).

Determining eligibility is a five-step process, but a finding that the claimant is disabled or not disabled at any point along the way is dispositive. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). Step one asks whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). If not, step two asks whether the claimant has a medically determinable impairment, or a series of impairments, that are severe. § 404.1520(c). If so, the question at step three is whether that impairment appears on a list that the agency keeps, pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1. If it does, then benefits are due; if it does not, then the ALJ pauses to determine the claimant's residual functional capacity (RFC), defined as the most physical and mental work the claimant can do on a sustained basis despite her limitations. 20 C.F.R. § 404.1545(a). The RFC is vital to steps four and five. At step four, the ALJ must evaluate whether the claimant can still—given her RFC—succeed in her past relevant work. If she can, then benefits must be denied. § 404.1520(f). If she cannot, the ALJ proceeds to the final step and determines, usually with the help of a vocational expert (VE), whether there are significant opportunities in the national economy that the claimant can perform given her RFC. § 404.1520(g)(1). Again, if there are, the ALJ will deny the application; if there are not, the claimant prevails. *Id.* Only at Step five does the Administration bear the burden of proof; until then, it rests with the claimant. *See Copeland*, 771 F.3d at 923; *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). To make these determinations, the "ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

According to the plaintiff, three errors infect the ALJ's decision and require reversal. The Court addresses—and overrules—each objection.

### A.      The Court overrules the plaintiff's first objection because the ALJ properly accounted for the plaintiff's mental limitations in the RFC finding.

First, the plaintiff argues that the ALJ may have accounted for some of her mental limitations when crafting the RFC but failed to account for others.  Specifically, the plaintiff alleges that "the ALJ did not account for Mindy C.'s acknowledged limitations in her ability to complete tasks, handle stress, or maintain attention for less than extended periods in his RFC finding."  Dkt. No. 29 at 2.  In her view, finding that she was capable of performing "detailed but not complex tasks" and that she should have "only occasional public contact" did not account for her "recognized inability to handle stress well or inability to maintain attention for periods greater than thirty minutes."  *Id.*

After reviewing the medical evidence and listening to the plaintiff's testimony, the ALJ found that the plaintiff "did not handle stress well, and she got stressed very easily." Dkt. No. 21-1 at 22.  This, combined with her memory, alertness, and attention, led the ALJ to determine that she "demonstrated moderate limitations" with regard to her "concentrating, persisting, or maintaining pace."  *Id.*  These findings are called "paragraph B findings" based on the relevant paragraph in the social security regulations.  The plaintiff takes no issue with these paragraph B findings.  *See* Dkt. No. 29 at 1–2.  Rather, she objects only to the ALJ's alleged failure to take the paragraph B findings into account when determining the RFC.  When determining the RFC, however, the ALJ need not incorporate his moderate limitation findings word-for-word in the RFC assessment.  *See Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008).  Indeed, the identified paragraph B limitations

"are not an RFC assessment but are used to rate the severity of mental impairment(s) at

steps 2 and 3."  Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *4 (1996).[1]

Here, the ALJ determined that restricting the plaintiff to simple tasks and severely

curtailing her contact with the public would adequately address her stress symptoms.  That

choice was supported by substantial evidence.  According to Nurse Practitioner Smola, the

plaintiff had displayed "normal mood and affect" in her medical assessment in March 2019.

Dkt. No. 21-1 at 25, 469.  Furthermore, the plaintiff's testimony linked the fact that she

didn't "take stress very well" with her "depression and anxiety" and her "antisocial"

feelings.  *Id.* at 44–45.  Thus, the ALJ's finding that she should have "only occasional public

contact" accounted for her "antisocial" feelings, anxiety, stress, coping difficulties, and

depression.  *Id.* at 23.[2]

As it relates to her concentration, the ALJ noted that, back in November 2018, the

plaintiff reported that she could pay attention "for about 30 minutes before [her] mind

wanders."  *Id.* at 22, 238.  Restricting the plaintiff's RFC to job tasks that are "not complex"

properly accounts for her assertion.  Simple, repeatable tasks like cleaning and

photocopying—the two occupations the vocational expert identified for plaintiff—can be

---

[1] Notably, the ALJ found that the plaintiff had no severe impairments directly related to her stress or attention-span.  Nor does the plaintiff argue that the ALJ erred in so finding.  That means that her stress and ability to focus constitute only "slight abnormalit[ies] having such minimal effect that [they] would not be expected to interfere with the individual's ability to work."  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).  Combined with the other impairments in the plaintiff's mental functioning, however, the ALJ appropriately tailored the RFC.  See *Williams v. Astrue*, No. CIV.A. 3:09-CV-0103-, 2010 WL 517590, at *8 (N.D. Tex. Feb. 11, 2010) (Fitzwater, J.) (recognizing that "the ALJ must still consider the impact of [the plaintiff's] non-severe mental impairments—either singly or in combination with other conditions—when he determines her RFC.").

[2] The plaintiff also testified that she recently started seeing someone to help her handle her anxiety and depression.  Dkt. No. 21-1 at 45.

performed even when one's mind occasionally wanders.  Moreover, the ALJ specified in the RFC that the plaintiff should take periodic breaks, by "alternat[ing] [between] sitting and standing every hour for a few minutes."  *Id.* at 23.  These breaks help account for any limitations in the plaintiff's attention span.

The rest of the record also "reflect[s] that [the ALJ] considered [p]laintiff's mental functioning when performing his RFC analysis."  *See Danny R. C. v. Berryhill*, No. 3:17-CV-1682, 2018 WL 4409795, at *15 (N.D. Tex. Sep. 17, 2018) (Ramirez, M.J.).  He noted that, according to her mental status examination on March 25, 2019, her "insight was good" and she "exhibited normal mood and affect."  Dkt. No. 21-1 at 25.  Further, he considered that, in July 2019, she was independently managing her activities of daily living according to her evaluation at Hendrick Medical Center.  *Id.*

When an ALJ properly considers a plaintiff's "mental impairments in calculating the RFC," the ALJ does "not err by not including any mental limitations in the RFC."  *Gonzales v. Colvin*, No. 3:15-CV-0685-D, 2016 WL 107843, at *6 (N.D. Tex. Jan. 11, 2016) (Fitzwater, J.).  The ALJ stands on even safer ground when, as here, he not only considers all the plaintiff's mental impairments, but also reasonably includes RFC limitations accounting for those impairments by restricting the plaintiff to simple tasks and limiting her interaction with the public.  In such a case, remand is not appropriate.

**B.    The Court overrules the plaintiff's second objection because the ALJ considered and accounted for the plaintiff's visual limitations in the RFC finding.**

Second, the plaintiff argues that the ALJ correctly determined that she had severe impairments related to her vision—namely, "a history of vitreous hemorrhage and macular edema in the left eye" (Dkt. No. 21-1 at 21)—but failed to incorporate any resulting

– 9 –

limitations in the RFC.  Dkt. No. 29 at 3–4.  It is true that the ALJ found these impairments in her left eye and that they "impose[d] more than a minimal limitation on [her] ability to perform basic work activities."  Dkt. No. 21-1 at 21.  But the ALJ made no error in his RFC finding.  The record and the RFC show that ALJ considered the medical evidence related to her vision, *id.* at 23–26, including her visual impairments, and accounted for them when determining the RFC.

The ALJ methodically recounted the plaintiff's medical history as it related to her vision, including the medical report prepared by Dr. Patel in October 2019, and noted that the plaintiff's "visual acuity was measured at 20/50 in the right eye and counting fingers in the left eye."  *Id.* at 24 (citing Exhibit 8F).  The ALJ also noted the plaintiff was "diagnosed with a vitreous hemorrhage in the left eye," according to the same report.  *Id.* (citing Exhibit 8F).  Several months prior, however, medical evidence showed that the plaintiff's vision in her right eye, with the help of correction, was 20/30.  *Id.* at 401.  Accordingly, the ALJ noted that she had "best corrected vision of 20/30 in [her] right eye."  *Id.* at 26.  And "based on [this] best corrected vision of the right eye," the ALJ determined that the plaintiff retained only "near acuity" in her vision—no better, no worse.  *Id.* at 23.[3]

Using the best corrected vision to determine her RFC makes sense because an RFC measures "the *most* that a person can still do despite recognized limitations."  *Walker v. Colvin*, No. 3:14-CV-1498-L (BH), 2015 WL 5836263, at *14 (N.D. Tex. Sept. 30, 2015) (Ramirez, M.J.) (emphasis added) (citing 20 C.F.R. § 404.1545(a)(1) (2003)).  The mere fact

---

[3] This finding is consistent with her testimony that she participated in many activities requiring adequate vision, such as watching a lot of movies, driving during the day, and occasionally reading.  Dkt. No. 21-1 at 47–55.  And even though the plaintiff's vision appears to have varied throughout the relevant time period, "[c]onflicts in the evidence are for the [ALJ] and not the courts to resolve."  *Brown*, 192 F.3d at 496 (quoting *Selders*, 914 F.2d at 617).

that the plaintiff had severe impairments in her left eye does not require the ALJ to specifically mention them in the RFC.  Rather, the ALJ must determine, as he did here, what the plaintiff can do despite her impairments.  *Id.*  Thus, even though the ALJ did not explicitly address her left eye in the RFC, he did so implicitly by determining her total visual capacity—near acuity—based on her better eye.  Moreover, the vocational expert testified that jobs existed in the national economy that required only "occasional" near acuity.  Dkt. No. 21-1 at 67 (vocational expert testifying that housekeeping and photocopy machine operating jobs would be available to individuals would "occasionally would be unable to perform work tasks requiring near acuity").  Finding occasional near acuity certainly recognizes a visual limitation.

So whether the ALJ determined she retained near acuity or only occasional near acuity, he "took into account the [plaintiff's] severe impairment," and correctly found that jobs existed that she could perform.  *Peggy Irene J. v. Saul*, No. 3:19-CV-1485-K-BN, 2020 WL 4005025, at *5 (N.D. Tex. June 23, 2020) (citing *Gonzalez v. Colvin*, No. 4:12-cv-641-A, 2014 WL 61171, at *6 (N.D. Tex. Jan. 6, 2014)), *report and recommendation adopted*, No. 3:19-CV-1485-K, 2020 WL 4001089 (N.D. Tex. July 14, 2020)).  Therefore, the ALJ committed "no error" because he "considered limitations that encompassed those imposed by the severe impairments or that accounted for the limitations in some respect."  *Id.* (collecting cases).

> **C.** **The Court overrules the plaintiff's third objection because substantial evidence supports the ALJ's RFC finding.**

Lastly, the plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to obtain a medical-source statement and improperly relied on his own "interpretation of the medical evidence of record and his lay

opinion." Dkt. No. 29 at 4–5 (citing *Ripley*, 67 F.3d at 557–58). In her view, without a medical-source statement, the only evidence the ALJ could rely on was her testimony, which established that "she can do an activity for about fifteen minutes, and then she has to rest; [she] cannot stand for long periods, or sit for long periods without elevating her feet; and she is unable to do any activities three-to-four times per week." *Id.* at 5. The ALJ found, however, that her statements "concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Dkt. No. 21-1 at 24.

The Court finds that substantial evidence supports the ALJ's determination. "Substantial evidence is more than a mere scintilla and less than a preponderance." *Copeland*, 771 F.3d at 923. When reviewing for substantial evidence, the Court does not reweigh the evidence or substitute its judgment for that of the ALJ. *Brown*, 192 F.3d at 496. This remains true even when the evidence preponderates against the ALJ's determination. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (citing *Johnson*, 864 F.2d at 343–44).

As it relates to medical opinions, the Fifth Circuit has explained that "the absence of a medical-source statement about a plaintiff's ability to work does not, by itself, make the record incomplete." *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (citing *Ripley*, 67 F.3d at 557). Indeed, "where no medical statement has been provided," courts must still ask "whether the decision of the ALJ is supported by

– 12 –

substantial evidence in the existing record." *Ripley*, 67 F.3d at 557.  If it is, reversal is not

appropriate.[4]

Regardless, an ALJ needs to understand a claimant's conditions and how those

conditions limit his ability to work.  *See id.* at 557–58.  In *Ripley*, the claimant showed that

he was prejudiced by the ALJ's determination that he could "perform[] sedentary work,

even though there was no medical testimony supporting th[at] conclusion."  *Id.* at 557.  In

fact, the evidence indicated that his back condition would likely not allow for full-time

sedentary work.  *Id.* at n.28.  Thus, the Fifth Circuit instructed the ALJ, on remand, "to

obtain a report from a treating physician regarding the effects of [the claimant's] back

condition upon his ability to work."  *Id.* at 557–58.

Unlike in *Ripley,* where no medical testimony and no other substantial evidence

supported the RFC finding, the ALJ's determination here was "supported by substantial

evidence in the existing record."  *Id.* at 557.  As already discussed in Section 3.B, with

respect to visual impairment, the ALJ relied on several pieces of medical evidence (*see* Dkt.

No. 21-1 at 24), culminating in his reliance on a report from the Abilene Eye Institute,

which indicated that she had "best corrected vision of 20/30 in [her] right eye."  Dkt. No.

21-1 at 26; *see id.* at 401.

Regarding the plaintiff's ability to do activities, she testified that she often

experiences fatigue, dizziness, and shortness of breath.  Dkt. No. 21-1 at 41–42.  However,

she consistently denied these symptoms in other medical evidence of record.  *See id.* at 25

---

[4] As explained by the Magistrate Judge, when an ALJ relies on other record evidence, he still may
not rely on his own medical opinions to determine the type of work the claimant can perform.  *See*
Dkt. No. 28 at 18 (citing *Williams v. Astrue*, 355 F. App'x 828, 832 (5th Cir. 2009)).

(citing Hospital Records from the Hendrick Provider Network and Treatment Records from the Abilene Eye Institute).  Accordingly, the ALJ found her testimony unpersuasive on this point.  *Id.* at 24–26.  And the ALJ's "adverse credibility determinations" were proper based on the "inconsistencies within her medical record and/or testimony."  *Gutierrez*, 2005 WL 1994289, at *7.

Similarly, despite her testimony that she was unable to do activities three to four times a week (Dkt. No. 21-1 at 57), other medical evidence also showed that she consistently walked normally, independently managed daily activities, and exhibited other normal physical symptoms.  *Id.* at 25 (citing progress notes from visits with several physicians over an eight-month period at the Presbyterian Medical Care Mission).  The ALJ reasonably interpreted this evidence in determining that she could "stand or walk for 6 hours in an 8-hour workday and can sit for up to 6 hours in an 8-hour workday," with the important limitation that she "needs to alternate sitting and standing every hour for a few minutes."[5]  Dkt. No. 21-1 at 23.  This finding also accounted for her testimony that she could not sit or stand for long—unspecified (*id.* at 57)—periods of time without taking breaks to elevate her feet, which regular work breaks could facilitate.  Indeed, the plaintiff's testimony indicated that she typically only took breaks to elevate her feet "once or twice a day."  *Id.* at 44.

---

[5] This finding was also consistent with the state agency medical consultants' opinions.  *See* Dkt. No. 21-1 at 75, 84, 90.  Nevertheless, the ALJ was also well within in his right to provide for limitations in the RFC beyond those found by the state consultants because subsequent medical evidence supported such a finding.  *Id.* at 26 (noting that "additional evidence was received in the course of developing the claimant's case for review").  The ALJ found that adding visual, postural, and mental limitations to the state consultants' determinations was "consistent with the weight of the evidence as a whole."  *Hernandez v. Astrue*, 278 F. App'x. 333, 338 (5th May 13, 2008).

Moreover, the plaintiff also testified that her medication helped control the discomfort and pain she felt in her legs. *Id.* Though the rest of her testimony may cast doubt on her ability to perform certain tasks, such as vacuuming her home without taking a break (*id.* at 51), the Court cannot say that "no credible evidentiary choices or medical findings support" the ALJ's RFC in light of the other medical evidence. *Harris*, 209 F.3d at 417 (citing *Johnson*, 864 F.2d at 343–44). Indeed, this Court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [ALJ], even if the evidence preponderates against the [ALJ's] decision." *Brown*, 192 F.3d at 496 (quoting *Johnson*, 864 F.2d at 343). Accordingly, the Court finds that the ALJ's findings are supported by substantial evidence in the record and that requesting a medical-source statement was not necessary.

## 4.    Conclusion

Having reviewed the objected-to portions of the FCR de novo, the Court finds that the ALJ's decision is supported by substantial evidence for all the reasons set forth above, as well as for the reasons explained by the Commissioner in her briefing and by the Magistrate Judge in his FCR. No plain error exists elsewhere in the FCR, so it is adopted in full. The Court affirms the Commissioner's decision to deny the plaintiff's application for SSI and disability benefits.

So ordered on August 9, 2022.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE